UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENNETH M.,

                     Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.

_____

**DECISION AND ORDER**

1:20-CV-01090 EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Kenneth M. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 13; Dkt. 14), and Plaintiff's reply (Dkt. 15). For the reasons discussed below, Plaintiff's motion (Dkt. 13) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion (Dkt. 14) is denied.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on November 17, 2017. (Dkt. 12 at 88, 261-75).[1]  In his applications, Plaintiff alleged disability beginning October 23, 2017.  (*Id.* at 88, 261, 268).  Plaintiff's applications were initially denied on February 2, 2018.  (*Id.* at 88, 159-60).   At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Ellen Parker Bush on September 17, 2019, with Plaintiff appearing in person in Jamestown, New York, and the ALJ presiding via video from Lawrence, Massachusetts.  (*Id.* at 88, 109-138).  On October 2, 2019, the ALJ issued an unfavorable decision.  (*Id.* at 88-100).  Plaintiff requested Appeals Council review; his request was denied on June 16, 2020, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 7-13).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of N.Y.*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not

disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. §§ 404.1560(c), 416.920(c).

## DISCUSSION

I.      **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act through December 31, 2022.  (Dkt. 12 at 90).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since October 23, 2017, the alleged onset date.  (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: mood disorder, depression, anxiety disorder, and a history of schizoaffective disorder.  (*Id.* at 91).  The ALJ also found that Plaintiff's medically determinable impairments of hydronephrosis, asthmatic bronchitis, type 2 diabetes mellitus, hypertension, gastroesophageal reflux disorder (GERD), obesity, and hyperlipidemia were nonsevere. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 92).  The ALJ particularly considered the criteria of Listings 12.03, 12.04, and 12.06 in reaching her conclusion.  (*Id.* at 92-95).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> [Plaintiff] can complete simple instructions and tasks and can tolerate only routine changes to tasks.

(*Id.* at 95).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 98).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of cashier, cleaner-housekeeper, and dishwasher.  (*Id.* at 99).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 100).

## II.   <u>Remand of this Matter for Further Proceedings is Necessary</u>

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that the ALJ failed to properly evaluate the medical opinion evidence.  (Dkt. 13-1 at 10-17).  As further explained below, the Court finds that the ALJ erred in her assessment of the medical opinion evidence, and that this error necessitates remand for further proceedings.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits."  *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011).  "The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional

capacity." *Puckett v. Berryhill*, No. 17CIV5392 (GBD)(KHP), 2018 WL 6061206, at *2 (S.D.N.Y. Nov. 20, 2018). "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information . . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).

In addition, the ALJ is required to properly evaluate the medical evidence. The Commissioner's regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017). Because Plaintiff's claim was filed on November 17, 2017, the new regulations, codified at 20 C.F.R. §§ 404.1520c and 416.920c, apply.

Pursuant to the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1)

through (c)(5) of the applicable sections. *Id*. Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at §§ 404.1520c(c), 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at §§ 404.1520c(a), 416.920c(a). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to "consistency," the new regulations prove that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id*. at §§ 404.1520c(b), 416.920c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the

medical opinions and how persuasive [he or she] find[s] all of the medical opinions."
*Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5
(N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted).  Specifically, the ALJ must
explain how she considered the "supportability" and "consistency" factors for a medical
source's opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may—but is
not required to—explain how he considered the remaining factors.  *Id.*

Here, the ALJ considered medical opinion evidence from three sources: state agency
psychologist D. Brown, Psy.D., consulting psychologist Janine Ippolito, Psy.D., and
treating psychiatrist Wang Kim, M.D.

In an opinion dated January 18, 2019, Dr. Brown opined that Plaintiff has a
moderate limitation in his ability to understand, remember, or apply information; a mild
limitation in his ability to interact with others; a moderate limitation in concentrating,
persisting, or maintaining pace; and a mild limitation in his ability to interact with others
and adapt or manage himself.  (Dkt. 12 at 142, 152).  The ALJ found Dr. Brown's opinion
to be somewhat persuasive given her review of the record, but concluded that Plaintiff's
own reports and treatment records did not support the level of limitation described by Dr.
Brown, particularly in light of Plaintiff's ability to work part-time.  (*Id.* at 97-98).

Dr. Ippolito opined in an opinion dated January 4, 2018, that:

[Plaintiff] presents as able to understand, remember or apply simple direction
and instructions; use reason and judgment to make work-related decisions;
sustain an ordinary routine and regular attendance at work; maintain personal
hygiene and appropriate attire; and demonstrate awareness of normal hazards
and taking appropriate precautions with no evidence of limitations.  He can
understand, remember or apply complex directions and instructions and
sustain concentration and perform a task at a consistent pace with mild
limitations.  He can interact adequately with supervisors, co-workers and the

public and regulate emotions, control behavior and maintain well-being with
moderate limitations.  These limitations are due to his emotional distress.

(*Id.* at 477).  The ALJ accorded Dr. Ippolito's opinion some weight based on Dr. Ippolito's

personal examination of Plaintiff but concluded that Plaintiff's treatment records and work

after the alleged onset date indicated a lesser limitation in his ability to interact with others

and adapt and manage, and a greater limitation in his ability to concentrate and focus.  (*Id.*

at 98).

Dr. Kim completed a two-page Medical Examination for Employability
Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination on
March 5, 2018.  (*Id.* at 992-993).  The ALJ concluded that "Dr. Kim's opinion is largely

illegible; nonetheless, it is accorded some weight to the extent that it is supported by the

medical evidence and treatment notes as of the date rendered."  (*Id.* at 98).

Plaintiff argues that the ALJ's acknowledgement that she was largely unable to read

Dr. Kim's opinion demonstrates that an adequate assessment of the opinion was not

conducted.  On these facts, the Court agrees.  "When records produced are illegible but

relevant to the plaintiff's claim, a remand is warranted to obtain supplementation and

clarification."  *Johnson v. Colvin*, No. 15-CV-649(HKS), 2016 WL 4472749, at *6

(W.D.N.Y. Aug. 25, 2016) (remanding where record was incomplete and a number of

available records were illegible (citing *Pratts*, 94 F.3d at 38); *Cutler v. Weinberger*, 516

F.2d 1282, 1285 (2d Cir. 1975) ("Where the medical records are crucial to the plaintiff's

claim, illegibility of important evidentiary material has been held to warrant a remand for

clarification and supplementation."); *Chamberlain v. Leavitt*, 2009 WL 385401, at *8-9

(N.D.N.Y. Feb. 10, 2009) (remanding in part because of "sporadic, brief and in some

instances, illegible" medical treatment records (citing *Cutler*, 516 F.2d at 1285)); *but see Kruppenbacher v. Astrue*, 2011 WL 519439, at *6 (S.D.N.Y. Feb. 14, 2011) (denying motion to remand where illegible record was neither relevant nor probative to Plaintiff's current capabilities); *Connor v. Barnhart*, No. 02 CIV. 2156 (DC), 2003 WL 21976404, at *8 (S.D.N.Y. Aug. 18, 2003) ("[C]ourts have held that illegibility of important medical records is a factor in warranting a remand for clarification and supplementation." (quotation and citation omitted)).

The opinion evidence from Dr. Kim is material and relevant to Plaintiff's claims. While the Regulations no longer direct an ALJ to assign specific evidentiary weight to the opinion of a treating physician, the ALJ is required nonetheless to consider the opinion and articulate how she considered a treating source's medical opinion, including explaining how she considered the "supportability" and "consistency" factors. Here, as noted, the ALJ characterized the opinion from Dr. Kim, the only treating source in the record, as "largely illegible," essentially conceding that by and large, the majority of the opinion was not considered at all. (Dkt 12 at 98). Even under the current regulations, the opinion of a treating source continues to have importance to the ALJ's analysis. *See Quijano v. Comm'r of Soc. Sec.,* No. 20-CV-3363 (PKC), 2022 WL 955144, at *6 (E.D.N.Y. Mar. 30, 2022) ("It is particularly important for ALJs to adequately attempt to obtain opinions from treating physicians . . . and to obtain additional evidence where there are apparent ambiguities or contradictions in the record . . ." (citations omitted)); *Ingrid T.G. v. Comm'r of Soc. Sec.*, No. 1:20-CV-5651-GRJ, 2022 WL 683034, at *7 (S.D.N.Y. Mar. 8, 2022) ("Although the treating physician rule no longer applies, this important principle persists,

as the opportunity to observe and treat the claimant constitutes important 'support' for a medical opinion under the new standard."); *see also Abualteen v. Saul*, No. 19CV2637 (DF), 2020 WL 5659619, at *28 (S.D.N.Y. Sept. 23, 2020) ("[T]he law is clear beyond cavil that where, as here, a treating physician's opinion is found by the ALJ to be vague or unclear, it is incumbent on the ALJ to recontact the treating physician for clarification of his or her opinion." (quotation and citation omitted)); *Westfall v. Saul*, No. 18-CV-1243L, 2020 WL 1189918, at *2 (W.D.N.Y. Mar. 12, 2020) ("The ALJ's discrediting of Dr. Sharma's partially-illegible June 15, 2015 opinion without recontacting her for clarification or elaboration, and his failure to consider any of the factors relevant to the evaluation of a treating physician's opinion, is error").

Further, the error is not harmless.  While the contents of the opinion in the administrative record may not be wholly legible, it is apparent that Dr. Kim opined that Plaintiff is moderately limited in standing, lifting, carrying, pushing, pulling, bending, understanding and remembering instructions and maintaining attention/concentration, and is very limited in an ability to function in a work setting at a consistent pace.  (Dkt. 12 at 993).  Dr. Kim's opinions as to Plaintiff's limitations were therefore more restrictive than the RFC crafted by the ALJ and were Dr. Kim's opinions credited, it may have directed a different outcome, including a finding that Plaintiff was disabled under the Act.  *See Johnnie J. v. Comm'r of Soc. Sec.,* No. 20-CV-00919-MJR, 2021 WL 2935053, at *5 (W.D.N.Y. July 13, 2021) ("The ALJ's failure to develop the record with the missing rheumatology records was not harmless because he relied on the absence of the records to discount Plaintiff's reported lupus symptoms and limitations."); *Kennedy v. Comm'r of*

*Soc. Sec.*, No. 17-CV-908-FPG, 2019 WL 988889, at *3 (W.D.N.Y. Mar. 1, 2019) (remanding where ALJ failed to obtain missing records making it "simply impossible to conclude with an absolute certainty the degree to which such records address plaintiff's limitations, and whether or not their review would persuade the ALJ to alter his decision regarding plaintiff's disability in general and RFC in particular" but it was clear that "the review of the missing records could be central to the ALJ's disability determination"); *Shaffer v. Comm'r of Soc. Sec.*, No. 16-CV-874-FPG, 2018 WL 5668511, at *2 (W.D.N.Y. Nov. 1, 2018) ("Had the ALJ obtained the missing records from Spectrum, it is possible that he would have afforded more weight to NP Turk's opinion, which was favorable to Plaintiff.").   Because Dr. Kim was the only treating source opinion of record and his opinions on Plaintiff's limitations were more restrictive than the RFC determined by the ALJ, the ALJ's failure to attempt to obtain a clearer copy of his opinions was error that cannot be considered harmless.

.      Moreover, while the ALJ went on to accord some weight to the opinion "to the extent it is supported by the medical evidence and treatment notes as of the date rendered," she provides no further explanation as to how or what medical evidence and treatment notes supported which parts of the opinion she was crediting.  (Dkt. 12 at 98).  These conclusory statements that she provided "some weight" for the opinions do not suffice to explain how the ALJ assessed the opinions in connection with the consistency and supportability factors which, as explained above, is required by the new regulations.   Any arguments by the Commissioner now as to which portions the ALJ credited, or that the record as a whole contained sufficient information upon which an RFC could be formulated, amount to "post-

hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself," and is no substitute for a proper analysis by the ALJ. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 234 (N.D.N.Y. 2012) (internal quotations and citation omitted).  The ALJ's conclusory analysis accordingly precludes the Court from undertaking meaningful review of her evaluation of Dr. Kim's opinion. *See, e.g., Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *13 (S.D.N.Y. Aug. 6, 2021) ("[R]ather than analyzing the supportability and consistency factors as applied to Dr. Long's opinion, the only reasoning the ALJ provided was entirely conclusory; the ALJ said only that Dr. Long's opinion was 'supported by the medical evidence of record and by her underlying examination.'  Such a conclusory statement is an insufficient explanation of the supportability factor and is grounds for remand." (internal citation omitted)); *Matthews v. Comm'r of Soc. Sec.*, No. 1:17-cv-00371-MAT, 2018 WL 4356495, *3 (W.D.N.Y. Sept. 13, 2018) ("The ALJ's failure to explain his assessment of this portion of Dr. Baskin's opinion prevents the Court from meaningfully reviewing his decision, and warrants remand.").  Accordingly, remand is also required on this basis.  On remand, the ALJ should attempt to obtain a legible copy of Dr. Kim's opinion and articulate in a more detailed fashion her assessment of the opinion under the regulations, including how she considered the "supportability" and "consistency" factors.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 13) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion for judgment on the pleadings (Dkt. 14) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: May 23, 2022
        Rochester, New York